IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASSAN WATKINS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRANDON GOULD | : | NO. 14-2502 |

<u>MEMORANDUM</u>

**Padova, J.**                                                          **December 18, 2014**

Plaintiff Rassan Watkins asserts negligence claims against Defendant Brandon Gould,
following a car accident in which Gould was the driver of a car in which Plaintiff was a passenger.
At the time, Gould was an employee of WCR Incorporated ("WCR"), and Gould and Plaintiff
were returning home from a job for WCR in New York City.  Gould has filed a Motion for
Summary Judgment, seeking judgment in his favor on the basis of the "borrowed employee"
doctrine, contending that Watkins was a borrowed servant of WCR and that Gould, as Plaintiff's
co-employee, is immune from suit because workers' compensation is Plaintiff's exclusive remedy.
After holding argument on Gould's Motion on November 19, 2014, we deny the Motion.

I.      **BACKGROUND**

The following record facts are relevant to this Motion.  At the time of the accident,
Plaintiff was an employee of Manpower, a temporary employment agency.  (Pl.'s Dep. Tr. at 23;
Gould Dep. Tr. at 24.)  Plaintiff began working for Manpower in 2012, approximately a month
and a half prior to the accident.  (Pl.'s Dep. Tr. at 23, 99.)  Within a day or two of hiring Plaintiff,
Manpower assigned him to work at WCR, a company that provides "heat exchanger service."
(<u>Id.</u> at 24, 100; Michael Watkins Dep. Tr. ("M. Watkins Dep. Tr.") at 18.)  WCR hired Plaintiff as
a "laborer."  (M. Watkins Dep. Tr. at 19.)  After Plaintiff was assigned to WCR, Plaintiff had no
further contact with anyone at Manpower, did not receive any direction from Manpower, and only

had a supervisor at WCR.   (Pl.'s Dep. Tr. at 86.)   According to Plaintiff, WCR could not hire him directly until he had been working with WCR for ninety days.   (Id. at 101-02.)   Michael Watkins, a WCR supervisor, confirmed that there was a ninety-day period probationary period and that if Plaintiff had proven himself after that time, WCR would have hired him as a permanent employee. (M. Watkins Dep. Tr. at 21.)   At the time of the accident, however, Plaintiff was not a permanent employee and did not have a contract with WCR.   (Id.)

Manpower and WCR had a "Standard Services Agreement" (the "Agreement"), whereby Manpower agreed, inter alia, to provide WCR with staffing services, and WCR agreed, inter alia, to supervise assigned employees' work.   (Agreement, attached as Ex. E to Def.'s Summ. J. Mot., ¶¶ 1(a), 2(a).)   Pursuant to this arrangement, WCR would typically give Manpower a description of the type of worker that it was looking for, and Manpower would send three or four prospective workers to WCR to be interviewed.   (M. Watkins Dep. Tr. at 15-16.)   When Manpower sent Plaintiff to WCR, WCR had the right to either accept or reject Plaintiff as a temporary worker. (Id. at 12.)

Two days before the accident at issue, Plaintiff began a job for WCR in New York City, at a United States Postal Service building near Ground Zero.   (Pl.'s Dep. Tr. at 29-30.)   The job involved the servicing of heating and cooling plates.   (See id. at 30.)   Essentially, the job was to open a heat exchanger, clean inside the exchanger, and then close it back up.   (M. Watkins Dep. Tr. at 19.)   Plaintiff worked with Gould and a third WCR employee named Matt, all of whom had the same duties.   (Pl.'s Dep. Tr. at 32-33.)   Gould, however, was the lead supervisor, and Plaintiff was the "low man on the totem pole."   (Id. at 32; M. Watkins Dep. Tr. at 22.)   Plaintiff took directions from Gould and Michael Watkins, the latter of whom was not on site, but called and stopped in to check up on the job.   (Pl.'s Dep. Tr. at 33.)   The three men (Plaintiff, Gould and

Matt) completed the job around 9:00 or 10:00 p.m. on the day before the accident.   (Id. at 32.)

While in New York, the workers stayed at the Days Inn in Queens.   (Id. at 29-30.) Plaintiff does not know whether he got paid for staying overnight because Gould filled out Plaintiff's time slips.   (Id. at 35, 86-87.)   On the day of the accident, April 25, 2012, the three workers drove to the work site from the hotel.   (Id. at 29.)   They cleaned up the tools, which belonged to WCR, observed a pressure test on the exchanger to make sure it was working properly, and then put the tools in the pickup truck.   (Gould Dep. Tr. at 19-20, 22-23; M. Watkins Dep. Tr. at 25.)   Plaintiff did not do any work on the heating exchanger that day.   (Gould Dep. Tr. at 23.) Plaintiff was paid for his time loading the truck in New York but, according to Plaintiff, his pay stopped after they loaded the truck, which they did between 6:00 a.m. and 9:00 a.m.   (Pl.'s Dep. Tr. at 98-99.)   The accident occurred when they were approaching the Holland Tunnel in New York City at 10:00 a.m., on their way back to WCR's Bensalem, Pennsylvania office.   (Id. at 27-28.)   According to Plaintiff, he was not working at the time of the accident and there was no job waiting for him when he returned to Bensalem.   (Id. at 36, 39-40.)   Plaintiff testified that his wife was going to pick him up at the Bensalem office and bring him home.   (Id. at 28, 98.) According to Gould, there was no additional work scheduled for that day; they just needed to return to the shop.   (Gould Dep. Tr. at 20-21.)   Gould testified that they would have all clocked out after they unloaded the truck at Bensalem.   (Id. at 23-24.)

Plaintiff testified that, as a general matter, he would be paid for his travel time back to Bensalem, but only if he had a job to do when he returned.   (Pl.'s Dep. Tr. at 36-38.)   On the day of the accident, there was no job waiting for Plaintiff when he returned to Bensalem, and he did not expect another assignment for a week and a half.   (Id. at 38-40.)   In contrast, Michael Watkins testified that Plaintiff would have been paid for all of his time from the time that he left the hotel in

the morning to go to the job site until he got back to Bensalem and clocked out.   (M. Watkins Dep.

Tr. at 12-13.)   Thus, according to Watkins, Plaintiff would have been on the clock during his trip

back to Bensalem.   (Id. at 13.)   Indeed, according to Watkins, the Manpower employees and the

WCR employees all got paid door-to-door.   (Id.)

After the accident, in which Plaintiff was injured, Plaintiff sought workers' compensation

benefits.   (See 7/17/13 Workers' Compensation Decision ("7/17/13 Workers' Comp. Dec."),

attached as Ex. 2 to Def.'s Suppl. Mem. of Law.)   Pursuant to their Agreement, Manpower, not

WCR, was required to maintain workers' compensation insurance for its assigned staff.

(Agreement ¶ 1(b).)   Manpower accepted liability for Plaintiff's claim by issuing a Notice of

Compensation Payable dated May 9, 2013.   (8/12/13 Workers' Compensation Decision ("8/12/13

Workers' Comp. Dec."), attached as Ex. L to Def.'s Summ. J. Mot., at 3.)   Plaintiff and

Manpower submitted a Compromise and Release Agreement to the Workers' Compensation Judge

("WCJ") for approval, and the WCJ, after holding a hearing, adopted the findings of fact in that

agreement, and found the agreement to be fair and equitable.   (See Compromise and Release

Agreement, attached as Ex. 1 to Def.'s Suppl. Mem. of Law; 7/17/13 Workers' Comp. Dec. at 3.)

The WCJ subsequently terminated Plaintiff's benefits as of July 10, 2013, concluding that the

evidence demonstrated that Plaintiff had fully recovered from his injuries.   (8/12/13 Workers'

Comp. Dec. at 3.)   In the decision terminating Plaintiff's benefits, the Workers' Compensation

Judge made a factual finding that Plaintiff sustained his injuries in the course and scope of his

employment with Manpower.   (Id.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the moving party has met its initial burden, the adverse party's response must support the assertion "that a fact cannot be or is genuinely disputed . . . by (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  In ruling on a summary judgment motion, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001) (internal quotation marks omitted).

## III.   DISCUSSION

Gould seeks summary judgment based on the borrowed employee doctrine.  Plaintiff, however, contends that the doctrine does not apply because he was not a borrowed employee of WCR and he was not in the course of any employment with WCR at the time of the accident.

### A.   The Borrowed Employee Doctrine

Under Pennsylvania law, which the parties agree is applicable here, "when an employee is furnished by one entity to another, the situation is one of a 'borrowed' employee."  Mine Safety Appliances Co. v. Workers' Comp. Appeal Bd., No. 1981 C.D. 2008, 2009 WL 9098755, at *3 (Pa. Commw. Ct. Feb. 26, 2009) (citing Accountemps v. Workmen's Comp. Appeal Bd., 548 A.2d

703 (Pa. Commw. Ct. 1988)).   "[A] person who is a borrowed employee may not sue the

borrowing employer for injuries that occurred on the job, since workers' compensation is the

exclusive remedy."   Haubrich v. Lyondell Chem. Worldwide, Inc., Civ. A. No. 01-1995, 2001

WL 1160590, at *1 (E.D. Pa. Aug. 1, 2001) (citing JFC Temps, Inc. v. Workmen's Comp. Appeal

Bd., 680 A.2d 862 (Pa. 1996).   The Workers' Compensation Act also covers "'all co-employees

in all situations where negligent conduct of one employe may cause injury to a fellow employe,

provided only that the injury in question is one that is compensable under the Act.'"   Albright v.

Fagan, 671 A.2d 760, 763 (Pa. Super. Ct. 1996) (quoting Apple v. Reichert, 278 A.2d 482, 485

(1971)).

"The question of whether an employer-employee relationship exists is one of law, based on

findings of fact."   JFC Temps, 680 A.2d at 864 (citation omitted).   The Pennsylvania Supreme

Court has set forth the following test for determining whether a worker is a borrowed employee:

> The test for determining whether a servant furnished by one person to another
> becomes the employee of the person to whom he is loaned is whether he passes
> under the latter's right of control with regard not only to the work to be done but
> also to the manner of performing it. The entity possessing the right to control the
> manner of the performance of the servant's work is the employer, irrespective of
> whether the control is actually exercised.   Other factors which may be relevant
> include the right to select and discharge the employee and the skill or expertise
> required for the performance of the work. The payment of wages may be
> considered, but is not a determinative factor.   Although the examination of these
> factors guides the determination, each case must be decided on its own facts.

Id. (citations omitted).   Ultimately, "the right to control the performance of the work is the

overriding factor."[1]   Id. at 865.

---

[1]   Plaintiff argues that, instead of applying the test for a borrowed employee set forth in JFC
Temps, we should apply the seven-factor test set forth in Mature v. Angelo, 97 A.2d 59, 60-62 (Pa.
1953), which the United States Court of Appeals for the Third Circuit applied in Williams v. Delta
Truck Body Company, 892 F.2d 327, 330 (3d Cir. 1989).   However, JFC Temps, not Mature,
"represents the Pennsylvania Supreme Court's most recent statement of the borrowed employee

In the instant case, the undisputed facts demonstrate that WCR had the right to control Plaintiff's work and the manner in which he performed it.   Indeed, as noted above, the evidence establishes that Gould and Michael Watkins supervised Plaintiff (Pl.'s Dep. Tr. at 32-33; M. Watkins Dep. Tr. at 22), and that Plaintiff received no direction from Manpower after his assignment to WCR (Pl.'s Dep. Tr. at 86).   (See also Agreement ¶ 2(a) (stating that WCR agrees to "supervise and control the work, premises, processes and systems to be performed by Assigned Employees").)   The undisputed facts also demonstrate that WCR had the right to select and discharge Plaintiff.   (M. Watkins Dep. Tr. at 16 (stating that WCR chooses hires from pools of people that Manpower sends); Agreement ¶ 1(d) ("In the event that [WCR] is not satisfied with the performance of any Assigned Employee, then upon [WCR's] request, Manpower will remove the Assigned Employee with whom [WCR] is not satisfied from the assignment . . . .").)[2]   Moreover, WCR trained Plaintiff, teaching him the skills necessary to complete his heater exchange work at WCR.   (M. Watkins Dep. Tr. at 21-22 (stating that WCR trained Plaintiff how to open, clean, and service a heat exchanger); Agreement ¶ 2(e) (requiring WCR to "train Assigned Employees with regard to all Client policies and procedures that may be adopted or implemented from time to time which, in Client's judgment, will enable Assigned Employees to successfully perform their

doctrine, and appears to condense previous versions." Claudio v. MGS Mach. Corp., 798 F. Supp. 2d 575, 581 n.11 (E.D. Pa. 2011).   Thus, the standard set forth in JFC Temps is the controlling standard under Pennsylvania law.   Moreover, Williams, like JFC Temps, emphasized that "'it is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised.'"   Id. (quoting Williams, 892 F.2d at 330).

[2] Plaintiff contends that Manpower had the right to select him because it pre-selected groups of prospective workers to send to WCR.   He further contends that the Agreement gave Manpower the right to discharge him because WCR could only request that he be removed and Manpower had to actually remove him.   This argument, however, overlooks the critical fact that WCR ultimately chose whom it wanted to hire and dictated when the relationship ended.

specific job duties").)   While there is evidence that Manpower paid Plaintiff's wages (see Gould Dep. Tr. at 24), this fact is not controlling as the Pennsylvania Supreme Court has made it clear that the "right to control the performance of the work is the overriding factor."   JFC Temps, 680 A.2d at 865; see also Haubrich, 2001 WL 1160590, at *1 (finding that temp agency's payment of wages did not outweigh defendant's right of control).   Thus, applying the test that the Pennsylvania Supreme Court has developed, we conclude as a matter of law that the undisputed facts demonstrate that Plaintiff was WCR's borrowed employee.   Accord Zaragoza v. BASF Constr. Chems., LLC, Civ. A. No. 08-96, 2009 WL 260772, at *4-5 (E.D. Pa. Feb. 3, 2009) (concluding that worker whom temporary employment agency placed with a stucco manufacturer was a borrowed employee of stucco manufacturer); Haubrich, 2001 WL 1160590, at *4-5 (finding that worker whom temporary employment agency placed with chemical company was a borrowed employee of the chemical company); Pryce v. D. Jackson & Assocs., Civ. A. No. 95-4417, 1997 WL 356301, at *3-5 (E.D. Pa. June 24, 1997) (concluding that worker whom temporary employment agency placed with wood processing company was a borrowed employee of the wood processing company).

Plaintiff contends that, irrespective of WCR's control over his work and the manner in which he performed it, we cannot conclude on summary judgment that he was WCR's borrowed employee because there is evidence in the record that he was not engaging in work that was within the regular course of WCR's business at the time of the accident.   In support of this argument, Plaintiff relies on Martin v. Recker, 552 A.2d 668 (Pa. Super. Ct. 1988), in which the court concluded that an individual was not a company's borrowed employee, irrespective of the company's control, because the individual's services for the company were "casual and not in the regular course of [the company's] business."   Id. at 672.   Martin, however, is easily

distinguishable from the instant case and, thus, is not applicable, much less controlling, here.

In Martin, a concert promoter hired a "transfer company" to load and unload equipment for a sound and lighting company ("Showco"), which was providing services for one of the promoter's concerts.  See id. at 670.  The plaintiff, an employee of the transfer company, was injured while loading Showco's equipment onto a truck at the end of the concert.  Id.  The plaintiff brought a negligence action against Showco, among others, and Showco claimed that it was immune under the Workers' Compensation Act.  Id. at 671-72.  The court concluded, however, that the plaintiff was not Showco's borrowed employee because, even though Showco was directing the plaintiff's loading of the truck, Plaintiff's relationship with Showco was "casual" and not in the regular course of Showco's business.  Id. at 672-73.

Plaintiff contends that he, like the plaintiff in Martin, was not a borrowed employee because he had a casual relationship with WCR and was not acting in the regular course of WCR's heater exchange business when he was injured.  However, Martin involved an extremely short-term, i.e., one-day, casual relationship, far different from Plaintiff's more formal relationship with WCR, which lasted for several weeks.  Moreover, unlike the situation in Martin, Plaintiff's work for WCR was in the ordinary course of WCR's business, as he was hired to clean and service heat exchangers, which is precisely WCR's business.  (See M. Watkins Dep. Tr. at 18-19.) While Plaintiff emphasizes that there is evidence that he was not performing any income-producing services for WCR at the precise time that he was injured, we do not read Martin to suggest that a court can determine whether an borrowed employer/borrower employee relationship exists by looking only at the precise activity occurring at the time of the plaintiff's injury, but rather understand it to require an assessment of the parties' overall relationship. Consequently, Martin does not support a conclusion that Plaintiff's relationship with WCR falls

under an exception to the borrowed employee doctrine.   We therefore conclude, as a matter of law, that Plaintiff was WCR's borrowed employee.

**B.      Course of Employment**

Our determination that Plaintiff was WCR's borrowed employee, however, does not end our inquiry as to whether Gould is immune from Plaintiff's suit and is thus entitled to summary judgment in his favor.   The Workers' Compensation Act only "restricts the remedies available to an employee for injuries sustained <u>in the course of employment</u>."   <u>O'Donnell v. New England Motor Freight, Inc.</u>, Civ. A. No. 06-1068, 2009 WL 674131, at \*4 (M.D. Pa. March 13, 2009) (emphasis added) (citing <u>Shick v. Shirey</u>, 716 A.2d 1231, 1237 (Pa. 1998), and 77 Pa. Cons. Stat. § 481)), <u>aff'd</u>, 373 F. App'x 182 (3d Cir. 2010).   Accordingly, the Act "closes to the employee any recourse against the employer at common law for negligence" only with respect to injuries that the employee sustained in the course of that employment.   <u>Id.</u>

Plaintiff maintains that he was not in the course of employment with WCR at the time of his injury.   He thus contends that Gould is not immune from suit as a co-employee of his borrowed employer.   Gould contends that the undisputed facts of record demonstrate that Plaintiff was in the course of his employment at the time he was injured.   Gould also asserts that, even if this were not so, the doctrine of issue preclusion bars Plaintiff from arguing that he was <u>not</u> in the course of his employment with WCR, because he sought and collected workers' compensation benefits for his injuries.

As an initial matter, we find that there are disputed facts regarding whether Plaintiff was in the course of his employment with WCR at the time he was injured.   Gould correctly notes that it is undisputed that, at the time of the accident, Plaintiff was returning to WCR's office in Bensalem from an out-of-town trip for WCR and was travelling in a car driven by his supervisor.   However,

the record also includes evidence that Plaintiff was not working at the time of the accident, that WCR did not have a job for him to do when he returned to Bensalem, and that he was not getting paid for his travel time that day.   (Pl.'s Dep. Tr. at 36-38; Gould Dep. Tr. at 20-21.)   This evidence is not undisputed, as the record also contains evidence that Plaintiff was paid for his travel time and that Plaintiff, Gould and Matt would have unloaded the truck and made sure everything was cleaned up in the truck before clocking out.   (Gould Dep. at 23-24; M. Watkins Dep. Tr. at 12-13).   However, we do not weigh disputed evidence or "make credibility determinations" when we decide a motion for summary judgment.   Doe v. Luzerne Cty., 660 F.3d 169, 175 (3d Cir. 2011).   We thus conclude that there are genuine issues of fact regarding Plaintiff's precise employment status at the time of the accident.

Gould suggests that these disputed facts are not material to the question of whether Plaintiff was in the course of his employment at the time of the accident, a question that he contends is governed by the "going and coming" rule.   "Generally, under the 'going and coming' rule, injuries sustained while an employee is traveling to and from his place of employment are considered outside the course and scope of employment . . . ."   Holler v. Workers' Comp. Appeal Bd., -- A.3d --, No. 2209 C.D. 2013, 2014 WL 5369869, at *2 (Pa. Commw. Ct. Oct. 17, 2014) (citation omitted).

> Such injuries will, however, be considered to have occurred during the course and scope of employment if one of the following four exceptions applies: (1) the claimant's employment contract includes transportation to and from work; 2) the claimant has no fixed place of work; (3) the claimant is on a special mission for employer; or (4) the special circumstances are such that claimant was furthering the business of the employer.

Id. (citation omitted)

Gould has not articulated the specific exception to the "going and coming" rule that he believes to apply here.   At oral argument, he cited two cases, <u>Kovalchick Salvage Co. v. Workmen's Compensation Appeal Board</u>, 519 A.2d 543 (Pa. Commw. Ct. 1986), and <u>Employers Mutual Casualty Co. v. Boiler Erection & Repair Company</u>, 964 A.2d 381 (Pa. Super. Ct. 2009), both of which involved workers who were found to be in the course of employment when travelling in company cars after leaving work sites.   The focus of these cases, however, was on whether the workers' consumption of alcohol while en route broke the course of employment, not on the question of whether the workers were in the course of employment at the outset. <u>Kovalchick</u>, 519 A.2d at 545-46; <u>Emp'rs Mut.</u>, 964 A.2d at 390-94.   Accordingly, we do not find that Gould's citation of these two cases provides us with an adequate legal basis on which to determine whether Plaintiff falls within one of the four exceptions to the "going and coming" rule.[3] Consequently, we conclude that Gould has failed to identify undisputed facts and law that would support a conclusion that Plaintiff was in the course of his employment at the time of the accident, and that he has therefore failed to establish that he is entitled to judgment as a matter of law at this time.

Gould also argues, however, that, regardless of the current factual record as to Plaintiff's course of employment, the doctrine of issue preclusion bars Plaintiff from arguing that he was not in the course of employment at the time of the accident, because the issue of whether the accident

---

[3]   At oral argument, Gould also cited <u>Toal Associates v. Workers' Compensation Appeal Board</u>, 814 A.2d 837 (Pa. Commw. Ct. 2003), in which the court found there to be substantial evidence to support a WCJ's finding that a worker was in the course of his employment, when he died taking a bath at a motel while on a multi-day out-of-town work assignment.   <u>Id.</u> at 839, 843. The <u>Toal</u> facts, however, are easily distinguishable from the facts in the instant case, and Gould has made no effort to apply the law applied in <u>Toal</u> to the facts in this case.   Consequently, we conclude that Gould's citation to <u>Toal</u> does not serve to satisfy his summary judgment burden of establishing that he is entitled to judgment as a matter of law.

arose in the course and scope of Plaintiff's employment was determined in the prior workers' compensation proceeding.   Federal courts "look to state law to determine the preclusive effect of a prior state judgment."   Metro. Edison Co. v. Pennsylvania Public Util. Comm'n, 767 F.3d 335, 350-51 (3d Cir. 2014) (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)).   The Pennsylvania Supreme Court has set forth the following five-prong test, which states that issue preclusion applies when:

> "(1) the issue decided in the prior case is identical to the one presented in the later action;
>
> (2) there was a final adjudication on the merits;
>
> (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case;
>
> (4) the party . . . against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and
>
> (5) the determination in the prior proceeding was essential to the judgment."

Id. (alteration in original) (quoting Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005)).

Gould argues that all four of these requirements are met in the instant case, contending that (1) the course of employment issue in the workers' compensation proceeding is identical to the one raised here; (2) there was a final adjudication on the merits in the workers' compensation proceeding insofar as the parties waived all right to appeal the WCJ's decision to approve the parties' Compromise and Release Agreement; (3) Plaintiff is the party against whom the doctrine is asserted; (4) Plaintiff had a full and fair opportunity to litigate the course of employment issue in the workers' compensation case; and (5) Plaintiff's assertion that he was injured in the course of his employment was essential to the judgment permitting him to collect of benefits.

Gould fails to recognize, however, that the employer in the workers' compensation proceeding was identified as Manpower, and the WCJ only made a factual finding that Plaintiff was injured in the course of his employment with <u>Manpower</u>.   (See, e.g., 8/12/13 Workers' Comp. Dec. at 3.)   Thus, the issue that is currently before us – whether Plaintiff was injured in the course of his employment with <u>WCR</u> – is not identical to the issue presented and decided in the workers' compensation proceeding.   Accordingly, we conclude that Gould has failed to meet his burden on summary judgment of establishing that issue preclusion bars Plaintiff's claim that he was not injured in the course of his employment with WCR.

## IV.   CONCLUSION

For the foregoing reasons, we conclude as a matter of law that Plaintiff was a borrowed employee of WCR.   We also conclude, however, that Gould has failed to establish that Plaintiff was in the course of his employment with WCR at the time of his accident, and thus has failed to meet his burden of establishing that he is entitled to judgment as a matter of law because he is immune from suit under the Workers' Compensation Act.   We therefore deny Gould's Motion for Summary Judgment.   An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J

14